UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:14-CV-00606-TBR

ALVIN G. STEPP                                                                             Plaintiff

v.

JBS SWIFT
d/b/a SWIFT & COMPANY TRADE GROUP                                    Defendant

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court upon Defendant's motion for summary judgment. (Docket #18). Plaintiff has responded. (Docket #22). Defendant has replied. (Docket #23). This matter now is ripe for adjudication. For the reasons that follow, Defendant's motion will be GRANTED in part and DENIED in part.

BACKGROUND

This action arises out of Plaintiff Alvin G. Stepp's termination by Defendant JBS Swift, d/b/a Swift & Company Trade Group ("Swift). On August 15, 2013, Stepp fell while at work. On August 19, Stepp was fired. Stepp alleges he was wrongfully terminated because he was injured and intended to file for workers' compensation benefits. Stepp also alleges he was discriminated against due to his age and disability. (Docket #1-2). Swift claims Stepp was fired after management reviewed video of Stepp's fall and observed Stepp violating a zero-tolerance "lock out/tag out" safety procedure. (Docket #19).

Stepp began working for Swift in 2005 at Swift's meat processing plant located in the Butchertown area of Louisville, Kentucky. Stepp was hired as an apprentice mechanic and later promoted to master mechanic. Throughout his employment Stepp worked the third shift. (Docket #22-4).

Stepp alleges he was harassed throughout his employment with Swift. Stepp suffers from limited hearing after having contracted German measles as a small child. (Docket #19-1). Stepp claims that other employees ridiculed him and took advantage of his lack of hearing. Employees would take Stepp's tools while he slept on his lunch break knowing that Stepp would not hear them. (Docket #22-3). Another employee put grease in Stepp's glasses while he slept. That employee also disassembled Stepp's gear while he slept, costing him time putting it back together when he awoke. (Docket #22-4). Stepp claims he was also mocked for his weight and age. When Stepp reported this to his supervisors they laughed off the behavior as a joke. Stepp also claims that one supervisor told him to "get a move on, old man," and "you fat son of a bitch, you need to move on." (Docket #22-4).

Stepp had surgery on his left knee in 2008 and surgery on his right knee in 2011. Stepp filed workers' compensation claims for both injuries. Stepp alleges he was subjected to higher standards of performance than other employees following these claims. (Docket #22). Other employees allegedly warned Stepp that Swift, a self-insured company, would fire Stepp because he was costing them too much money.[1]

---

[1] Stepp also had a hernia operation and was fitted for dentures while employed by Swift. (Docket #22).

Stepp claims Swift attempted to terminate him on February 19, 2013, but he was reinstated after filing a grievance with his union. (Docket #22).

On August 15, 2013, at approximately 1:15 a.m. Stepp fell and injured his leg and head. Stepp finished his shift and reported his fall. (Docket #22-3). Stepp was told to report to Health Services before beginning the next night's shift. During the following day Swift called Stepp and instructed him to instead report to Human Resources. Stepp met with a supervisor from Human Resources, a supervisor from Maintenance, and a Safety Manager. Stepp was shown a video of his fall and informed he was being terminated for violating Swift's zero tolerance "lock out / tag out" policy. (Docket #22-3). Following his fall Stepp had no recollection of the events that took place. In November or early December of 2013, Stepp recalled that a female employee had fallen and grabbed the power cord to the machine Stepp had worked on, making it impossible and unnecessary to lock out. (Docket #22-3).

In August, 2014, Stepp filed this lawsuit asserting Swift discriminated against Stepp on the basis of age and disability and also that Swift wrongfully discharged him. (Docket #1-2). Swift has moved for summary judgment on all claims. (Docket #19).

### STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir.

1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; he must present evidence on which the trier of fact could reasonably find for him. *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). "[T]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996), *abrogated on other grounds by Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312 (6th Cir. 2012). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Still, "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1). Finally, while the substantive law of Kentucky is applicable here pursuant to *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938), a federal court sitting in diversity applies the standards of Fed. R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W2d 476 (Ky. 1991)." *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 165 (6th Cir. 1993), *abrogated on other grounds by Hertz Corp. v. Friend*, 559 U.S. 70 (2010).

DISCUSSION

Stepp claims Swift discriminated against him on the basis of his disability and age. Stepp also claims Swift wrongfully terminated Stepp. The Court will first address the threshold matter of whether (I) the Kentucky Workers' Compensation Act provides an exclusive remedy which bars Stepp's claims. The Court will turn to whether (II) Stepp may recover punitive damages. Finally, the Court address Swift's argument that there is insufficient evidence to support (III) Stepp's discrimination claims and (IV) Stepp's wrongful termination claim.

## I.     Exclusive Remedy.

As an initial matter, Swift argues Stepp cannot recover for his discrimination and wrongful termination claims because Stepp has filed a claim for workers' compensation benefits. Swift argues the Kentucky Workers' Compensation Act contains an exclusive remedy provision which bars "double recovery." (Docket #19).

The "exclusive remedy" provision of the Kentucky Workers' Compensation Act states: "If an employer secures payment of compensation as required by this chapter, the liability of such employer under this chapter shall be exclusive and in place of all other liability of such employer to the employee . . . ." KRS § 342.690 (2015). Importantly, the Act creates an exclusive remedy only for liability arising "under this chapter." *Id*. The Kentucky Supreme Court has expressly rejected Swift's argument and held that "the workers' compensation statute preempts only common law tort claims and does not preempt a statutory civil rights claim." *Meyers v. Chapman Printing Co.*, 840 S.W.2d 814, 819 (Ky. 1992) ("This Court must presume that the General Assembly knew of the Workers' Compensation Law preemption doctrine when it created a private cause of

action for 'actual damages' caused by discrimination in the Kentucky Civil Rights Act"); *see also Gardinella v. General Elec. Co.*, 833 F. Supp. 617, 619 (W.D. Ky. 1993) ("K.R.S. § 342.690 does not preclude claims for damages brought pursuant to the Kentucky Civil Rights Act, which provides a specific and independent cause of action to remedy employment discrimination"). Accordingly, Stepp's wrongful termination and discrimination claims are not barred by the Kentucky Workers' Compensation Act.

## II. Punitive Damages.

Stepp has requested punitive damages. Swift argues Kentucky law does not permit the recovery of punitive damages for either a discrimination claim or a wrongful termination claim.

A plaintiff may recover "actual damages" for any claim, such as a discrimination claim, brought pursuant to KRS § 344. Similarly, a plaintiff may recover "actual damages" for a claim brought under KRS § 342.197, the statute which prohibits wrongful termination and discrimination. "'Actual damages' are compensatory in nature and, as such, do not include punitive damages." *Ky. Dep't of Corr. v. McCullough*, 123 S.W.3d 130, 138 (Ky. 2003) (*citing* 22 Am. Jur. 2d Damages § 24). The Kentucky Supreme Court has plainly stated "punitive damages are not available under KRS 344.450." *Id.* The Kentucky Court of Appeals, adopting the reasoning of *McCullough*, has similarly found that punitive damages may not be recovered for a wrongful termination claim brought pursuant to KRS § 342.197. *Dollar Gen. Partners v. Upchurch*, 214 S.W.3d 910, 921 (Ky. Ct. App. 2006).

Stepp argues the case of *Taylor v. King*, 345 S.W.3d 237 (Ky. Ct. App. 2010) has modified the law. *Taylor* is a Dram Shop Act case which, although addressing the issue

of punitive damages, does not address whether punitive damages may be recovered as a portion of actual damages or whether punitive damages may be recover in a discrimination or wrongful termination claim. The Court finds no indication that *Taylor* was intended to modify clear Kentucky precedent that punitive damages are not recoverable for claims grounded upon KRS § 344.450 or KRS § 342.197. Accordingly, the Court finds that Stepp's request for punitive damages must be denied.

### III.    Discrimination Claims.

Stepp claims that Swift discriminated against him both on the basis of his age and disability. "It is an unlawful practice for an employer" to discriminate against an individual "because of the individual's race, color, religion, national origin, sex, age forty (40) and over, because the person is a qualified individual with a disability. . . ." KRS § 344.040(1).[2] A plaintiff may establish a discrimination claim by either direct or circumstantial evidence. *See Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009). "Direct evidence is 'that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's action.'" *Scola v. Publix Supermarkets, Inc.*, 557 F. App'x 458, 465 (6th Cir. 2014) (*quoting Geiger*, 579 F.3d at 620). "Circumstantial evidence, on the other hand, is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Hale v. ABF Freight Sys., Inc.*,

---

[2] "'The Kentucky age discrimination statute is specially modeled after the Federal law' and in this particular area the Kentucky courts will 'consider the way the Federal act has been interpreted.'" *Harvey v. I.T.W., Inc.*, 672 F. Supp. 973, 974 (W.D. Ky. 1987); *Harker v. Federal Land Bank of Louisville*, 679 S.W.2d 226, 229 (Ky. 1984); *see also Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 393 (6th Cir. 2008).

503 F. App'x 323, 330 (6th Cir. 2012) (*quoting Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (*en banc*)) (internal quotation marks omitted).

Absent direct evidence of discrimination, the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) applies. *Monette*, 90 F.3d at 1186. The plaintiff must first make a *prima facie* case of discrimination. *Id*. This requires a plaintiff to show: (1) he is a member of a protected class; (2) he was otherwise qualified for the position; (3) he suffered an adverse employment action; and (4) the circumstances under which he suffered that action give rise to the inference of unlawful discrimination. *Id*. Once a *prima facie* case is established, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for the adverse action. *Id*. If the defendant offers sufficient evidence of a legitimate, nondiscriminatory reason, the burden then shifts back to the plaintiff to identify evidence from which a reasonable jury could conclude that the proffered reason is actually pretext for unlawful discrimination." *Id*.

### A. Disability Discrimination.

To establish a *prima facie* case of disability discrimination, a plaintiff must show "(1) he is an individual with a disability; (2) he is 'otherwise qualified' to perform the job requirements, with or without reasonable accommodation;" and (3) he suffered an adverse employment decision "solely by reason of his handicap." *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 452 (6th Cir. 2004) (quoting *Monette*, 90 F.3d at 1178).

Swift argues that Stepp's disability discrimination claim must fail because Stepp has failed to explain how he was disabled. A person is "disabled" if they suffer "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 452 n. 5 (6th Cir. 2004) (quoting 42 U.S.C. § 12102(2)); *see also Hallahan v. Courier-Journal*, 138 S.W.3d 699, 707 (Ky. Ct. App. 2004). "The EEOC has defined 'major life activity' to include both caring for oneself and working." *McKay v. Toyota Motor Mfg., U.S.A., Inc.*, 110 F.3d 369, 371 (6th Cir. 1997). "As prior decisions of [the Sixth Circuit] and the regulations interpreting the ADA make clear, the inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." *Burns v. Coca-Cola Enterprises, Inc.*, 222 F.3d 247, 253 (6th Cir. 2000) (citation omitted). A plaintiff must show that her disability "restrict[ed] her ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. *McKay*, 110 F.3d at 373.

Stepp alleges he was disabled due to knee problems and hearing loss. However, Stepp does not explain how his knee problems prevented him from doing his job other than that he "perform[ed] some tasks more slowly than other employees." (Docket #22). Stepp claims his hearing loss made it difficult to communicate with his supervisors. In response, Swift argues it hired Stepp with full knowledge of his hearing difficulties, regularly tested him for hearing loss, and promoted Stepp even though his hearing loss worsened. Swift also claims that, due to the noisy work environment that

Stepp worked in, all employees wore gear to protect their hearing and verbal communication was limited. (Docket #19).

Stepp's claim that he performed some work more slowly than others and had some difficulty communicating is insufficient to meet his initial burden of showing that he suffered from a disability. *McKay*, 110 F.3d at 373; *see also Kotwica v. Rose Packing Co.*, 637 F.3d 744 (7th Cir. 2011) (finding insufficient evidence that employee at meat packing plant was disabled due to hip problems resulting in surgery because she worked regularly as a general laborer and after surgery worked as a receptionist, office inspector, and quality inspector). Accordingly, Swift is entitled to summary judgment on Stepp's disability discrimination claim.

### B. Age Discrimination.

To establish a *prima facie* case of age discrimination a plaintiff must show: (1) he is a member of a protected class; (2) he was otherwise qualified for the position; (3) he suffered an adverse employment action; and (4) the circumstances under which he suffered that action give rise to the inference of unlawful discrimination. *Id.*

There is no dispute that Stepp, who was 57 at the time of his termination, was a member of a protected class for the purpose of Stepp's age discrimination claim. Stepp was qualified for his position and suffered an adverse employment action when he was terminated. However, Swift argues that the circumstances under which Stepp was terminated do not raise an inference of discrimination. The burden to establish a *prima facie* case "is not onerous" and is "easily met." *Cline v. Catholic Diocese*, 206 F.3d 651, 660 (6th Cir. 1999); *Neis v. Fresenius USA, Inc.*, 219 F. Supp. 2d 799, 808 (D. Mich. 2002) ("the court must look at the evidence and make all reasonable inferences in

the light most favorable to Plaintiff"). Stepp allegations that he was held to a higher standard of work while also mocked and verbally harassed by other employees and a supervisor is sufficient to establish a *prima facie* case of discrimination.

Swift argues Stepp has not established a *prima facie* case because Stepp was terminated for violating the "lock out/tag out" policy. (Docket #19). However, the Court assesses plaintiff's *prima facie* case "independent of the nondiscriminatory reason 'produced' by the defense as its reason for terminating plaintiff." *Cline*, 206 F.3d at 661. ("a court misapplies the structure of McDonnell Douglas by holding that she fails at the *prima facie* stage due to defendant's nondiscriminatory reason").

As Stepp has established a *prima facie* case[3] the burden shifts to Swift to establish a legitimate, nondiscriminatory reason for Stepp's termination. "To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981). "The explanation provided must be legally sufficient to justify a judgment for the defendant." *Id*. "This is merely a burden of production, not of persuasion, and it does not involve a credibility assessment." *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 585 (6th Cir. 2009). Swift has met this burden by stating that Stepp was terminated for violating the "lock out / tag out" policy.

---

[3] "The prima facie case serves an important function in the litigation: it eliminates the most common nondiscriminatory reasons for the plaintiff's rejection. . . . [T]he *prima facie* case 'raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors.'" *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253-54, 101 S. Ct. 1089, 1094, 67 L. Ed. 2d 207 (1981) (citations omitted).

*Bd. of Trustees of Keene State Coll. v. Sweeney*, 439 U.S. 24, 24 (1978) ("the employer need only 'articulate some legitimate, nondiscriminatory reason for the employee's rejection'") (citation omitted).

Once a defendant has met their burden, "the presumption raised by the *prima facie* case is rebutted, and the factual inquiry proceeds to a new level of specificity." *Burdine*, 450 U.S. at 255. "[A]lthough the presumption of discrimination drops out of the picture once the defendant meets its burden of production, the trier of fact may still consider the evidence establishing the plaintiff's prima facie case and inferences properly drawn therefrom." (citation and punctuation omitted) *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000). "A plaintiff may demonstrate that an employer's proffered legitimate reason for an adverse employment action is pretextual on any of three grounds: 1) by showing that the reason has no basis in fact; 2) by showing that the reason did not actually motivate the employer's action; or 3) by showing that the reason was insufficient to motivate the action." *Macy v. Hopkins Cty. Sch. Bd. of Educ.*, 484 F.3d 357, 366 (6th Cir. 2007) *abrogated by Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312 (6th Cir. 2012). "The first type of showing is easily recognizable and consists of evidence that the proffered bases for the plaintiff's discharge never happened, i.e., that they are 'factually false.'" *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994). Similarly, the "third showing is also easily recognizable and, ordinarily, consists of evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff." *Id*. The second showing is "entirely different"

in that the plaintiff "admits the factual basis underlying the employer's proffered explanation" and "admits that such conduct *could* motivate dismissal" but argues the employer's actions were nevertheless motivated by discrimination. *Id.* "Whether judgment as a matter of law is appropriate in any particular case will depend on a number of factors" including "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." *Reeves*, 530 U.S. at 148-49.

Stepp argues that the factual basis for his firing – that he violated the "lock out/tag out" policy – is factually false. Although discovery is now complete, neither side has presented this Court with a wealth of evidence as to whether Stepp violated the "lock out / tag out" policy. Stepp relies primarily on his own deposition testimony. Stepp claims that when he fell he lost memory of the accident, but approximately three months later "memory of this incident returned and I recalled that there was a woman employee in the production crew on duty at the machine in question, prior to my shift, who had grabbed the cord to keep herself from falling and pulled the cord from the machine making it impossible (and unnecessary) to 'lock it out' because there was no power cord." (Docket #22-3). Stepp claims his memory is corroborated by two Swift employees who have knowledge of the incident. Stepp also claims that Swift's parts department will have a record of Stepp requesting a replacement cord.

In response, Swift has produced a video of Stepp's fall. (Docket #23-2). This video could, with the aid of a knowledgeable witness, explain how Stepp violated the lock out / tag out policy. However, viewing the video on its own, the Court is unable to

apply Swift's lock out / tag out policy (a copy of which has not been provided) to the fall and conclude that Stepp violated that policy. Swift claims this video was reviewed by Swift's management and that Stepp filed and lost a union grievance on this issue, but Swift has not provided affidavits or other evidence to support these assertions. Swift has provided maintenance records which Swift claims do not show that Stepp made a request for a replacement cord.

Stepp has presented a *prima facie* case that he was discriminated due to his age. While it may be true that Swift terminated Stepp for violating the lock out / tag out policy, the Court finds that, given the evidence before it, a reasonable jury could conclude that Swift's stated reason for terminating Stepp was pretextual. *See e.g. Reeves*, 530 U.S. at 151; *Peck v. Elyria Foundry Co.*, 347 F. App'x 139, 145 (6th Cir. 2009) (unpublished); *Asmo v. Keane, Inc.*, 471 F.3d 588, 598 (6th Cir. 2006). Accordingly, at this time the Court finds that Swift is not entitled to summary judgment on Stepp's claim of age discrimination.

### IV.     Wrongful Termination.

Stepp also alleges he was wrongfully terminated "in retaliation for the exercise of his statutorily protected rights to file claims for worker's compensation and disability benefits." (Docket #1-2). Swift argues Stepp has not provided sufficient evidence in support of this claim.

"Kentucky courts apply a modified version of the McDonnell Douglas burden-shifting scheme to retaliation claims." *Vaughan v. Berry Plastics Corp.*, 2013 U.S. Dist. LEXIS 8437 *6 (W.D. Ky. 2013); *Bishop v. Manpower, Inc.*, 211 S.W.3d 71, 75 (Ky. Ct. App. 2006). In order to establish a *prima facie* claim for worker's compensation

retaliation, a plaintiff must demonstrate that: (1) he engaged in protected activity; (2) the defendant knew that he had done so; (3) an adverse employment action was taken; and (4) there is a causal connection between the protected activity and the adverse employment action. *Hackworth v. Guyan Heavy Equip., Inc.*, 613 F. Supp. 2d 908, 915 (E.D. Ky. 2009); *Brooks v. Lexington-Fayette Urban County Hous. Auth.*, 132 S.W.3d 790, 803 (Ky. 2004). "As to the last prong of this test, the employee must prove that the workers' compensation claim was a substantial and motivating factor but for which the employee would not have been discharged." *Bishop v. Manpower, Inc.*, 211 S.W.3d 71, 75 (Ky. Ct. App. 2006). "Once a prima facie case is established, the burden shifts to the defendant to show a non-retaliatory reason for the adverse employment decision." *Dollar Gen. Partners v. Upchurch*, 214 S.W.3d 910, 916 (Ky. Ct. App. 2006). "If the employer satisfies this burden of production, the burden returns to the plaintiff to introduce evidence showing that the proffered explanation is pretextual." *Bishop*, 211 S.W.3d at 75.

Stepp claims he engaged in a protected activity in filing workers' compensation claims in 2005 and 2010, after which Swift's "attitude toward him changed perceptibly." (Docket #22). Stepp also argues he filed a workers' compensation claim from the fall precipitating this case. In response, Swift argues that Stepp's 2005 and 2010 workers' compensation claims are too far removed from this claim to support it. Swift also argues that Stepp did not file his workers' compensation claim from his August, 2013 fall until approximately eleven months later.

The temporal proximity between a workers' compensation claim and alleged wrongful discharge is significant. "The sooner adverse action is taken after the

protected activity, the stronger the implication that the protected activity caused the adverse action, particularly if no legitimate reason for the adverse action is evident." *McCullough*, 123 S.W.3d at 135 (*quoting* Justin P. O'Brien, Weighing Temporal Proximity in Title VII Retaliation Claims, 43 B.C. L. Rev. 741, 749 (May, 2002)). If Stepp's 2005 and 2010 claims stood alone they would be too far removed to support a *prima facie* case of discrimination. *Hackworth*, 613 F. Supp. 2d at 916 ("Hackworth made a claim for workers' compensation benefits in 2004, and then three years later, he lost his job. This gap is simply too great to permit an inference of a causal connection"). However, these claims are presented as a series of events showing Swift's changing attitude towards Stepp. Moreover, while it is true that Swift terminated Stepp before he filed his most recent workers' compensation claim, it would have been practically impossible for Stepp to have filed a workers' compensation claim between his August 15 fall and his August 19 termination. A wrongful discharge claim may be based on an unfiled workers' compensation claim. *Overnite Transp. Co. v. Gaddis*, 793 S.W.2d 129 (Ky. Ct. App. 1990). Accordingly, the Court finds that Stepp has established a *prima facie* case of wrongful termination.

At stated above, the Court has already found that Swift has offered a legitimate, non-retaliatory reason for terminating Stepp. The burden shifts back to Stepp to show that Swift's stated reason is actually a pretext. The test in a wrongful termination case is similar to the test for pretext in a discrimination case. *Witham v. Intown Suites Louisville Northeast, LLC*, 2015 U.S. Dist. LEXIS 74771 *14 (W.D. Ky. 2015) ("Proving that a proffered legitimate, non-discriminatory reason for firing is mere pretext requires a showing that the stated reason (1) had no basis in fact, (2) did not

actually motivate the adverse employment action, or (3) was insufficient to motivate the adverse employment action") (citation and punctuation omitted).  As explained above, on the evidence before the Court there is a factual dispute upon which a reasonable jury could find in Stepp's favor.  Accordingly, Swift is not entitled to summary judgment on this issue.

## CONCLUSION

IT IS HEREBY ORDERED that, for the foregoing reasons, Defendant's motion for summary judgment (Docket #18) is GRANTED in part and DENIED in part.  Stepp's disability discrimination claim and Stepp's claim for punitive damages are dismissed.  All other claims remain.

cc:	Counsel